**Ricardo Javier REY–CRUZ, Plaintiff,**

v.

**FORENSIC SCIENCE INSTITUTE (ICF), et al., Defendants.**

**Civil No. 10–1739(DRD).**

United States District Court, D. Puerto Rico.

May 16, 2011.

---

330

Julio E. Gil–De–Lamadrid, Gil–De–Lamadrid, PSC, Bayamon, PR, for Plaintiff.

Angel E. Rotger–Sabat, Maymi, Rivera & Rotger–Sabat, Miguel A. Rangel–Rosas, Maymi, Rivera & Rotger, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. PROCEDURAL HISTORY

The instant case involves claims of discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, along with several claims arising under the laws of Puerto Rico, over which this Court exercises supplemental jurisdiction. Currently before the Court is Defendants' *Motion to Dismiss* (Docket No. 24). Plaintiff timely filed his opposition to Defendant's request for dismissal (Docket No. 27). The Court referred the instant motion to Magistrate Judge Camille L. Velez–Rive on April 4, 2011 (Docket No. 31), and she entered her *Report and Recommendation* (Docket No. 33) on April 14, 2011.

In her *Report and Recommendation,* the Magistrate recommended that Defendants' motion to dismiss be denied as to co-Defendant Forensic Science Institute (ICF) but granted as to co-Defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza. Specifically, the Magistrate found that Plaintiff alleged sufficient facts with sufficient detail to provide a factual predicate for a violation of Title VII and the ADA. The Magistrate Judge based this finding of employment discrimination on Defendants denying Plaintiff's reasonable requests to not work the overnight shift on account of his sleep apnea. Further, the Magistrate concluded that there is no individual liability under Title VII. While the First Circuit has not ruled if there is individual liability under the ADA, other circuits have so concluded and the Magistrate determined that the ADA should have an identical interpretation as Title VII. Accordingly, the Magistrate Judge recommended dismissal with the regard to the individual Defendants as no individual liability exists under Title VII and the ADA. Having reached this conclusion on individual liability, the Magistrate Judge found Defendants' assertion of qualified immunity was moot and therefore did not address those contentions. Lastly, Magistrate Judge Velez–Rive determined that Eleventh Amendment immunity is not applicable as Congress specifically abrogated such immunity in employment discrimination actions.

On April 20, 2011, Plaintiff requested a ten (10) day extension to file an opposition to the Magistrate Judge's *Report and Recommendation* (Docket No. 34). On the same day, the Court granted Plaintiff's request. To date, neither Plaintiff nor Defendants have filed an opposition to the *Report and Recommendation.*

### II. REFERRAL TO THE MAGISTRATE JUDGE

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See*

*also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993)(stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987)(holding that appellant was entitled to a de novo review, "however he was

not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996)(*en banc*)(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)(en banc)(appeal from district court's acceptance of unobjected to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001)(finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990)(finding that "when no objections are filed, the district court need only review the record for plain error").

After a careful analysis, the Court finds no "plain error" in the instant case and concurs with the Magistrate Judge's conclusions. Thus, rather than repeating the set of facts that pertain to the instant case in their entirety, the Court hereby **AC-CEPTS, ADOPTS AND INCORPO-RATES** by reference the Magistrate Judge's findings of fact *in toto*, noting particularly that they remain unchallenged.

### III. MOTION TO DISMISS

■ Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009)(quoting *Iqbal,* 129 S.Ct. 1937) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Id. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id. Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009).

A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596.

## IV. ANALYSIS

### A. Failure to State a Claim Under Rule 12(b)(6)

The Court agrees with the Magistrate Judge that Plaintiff's complaint, taking all allegations as true, could provide a reasonable factfinder to conclude under the "plausibility" standard that Defendants are liable for the alleged misconduct. See *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Thus, Plaintiff is able to state a claim for relief as a matter of law. The Court briefly explains.

■ The *Report and Recommendation* summarizes the substantial details Plaintiff alleges in his complaint of employment discrimination and of the subsequent retaliation. Therein, Plaintiff avers that he informed his employer of a medical condition, made a request not to be scheduled for a certain shift as a result of his condition and his employer ignored those requests. Plaintiff further claims a host of injustices upon filing his notice of complaint: Plaintiff was threatened, an administrative investigation was launched about a non-work related matter, his employer attempted to press criminal charges against Plaintiff for another non-work related matter; Plaintiff was not allowed to return to work after receiving medical treatment; and Plaintiff was not guaranteed the statutorily mandated one-year re-

tention of employment while undergoing medical treatment pursuant to local law.

Additionally, Plaintiff's employment status was so unclear that the state court had to issue Defendants a court order to identify whether Plaintiff was still employed or not. Only in complying with that court order did Defendants provide a letter of dismissal. Prior to that dismissal, Plaintiff had not received any disciplinary action for performance, insubordination or violations of employment polices. The Court, therefore, readily finds that these allegations, taken as true, state a claim for relief and meet the *Twombly/Iqbal* "plausibility" test.

### B. Individual Liability

The Magistrate Judge correctly determined that the First Circuit has definitively held that there is no individual liability under Title VII. *Fantini v. Salem State Coll.*, 557 F.3d 22, 28–31 (1st Cir.2009). However, neither the U.S. Supreme Court or the First Circuit have addressed individual liability under the ADA. Yet, the majority of circuits, along with the District of Puerto Rico, have previously held that

the ADA does not provide for individual liability.[1]

Additionally, as many courts have previously articulated, the ADA and Title VII are identical in many respects. "Specifically, the ADA's definition of 'employer' tracks that of Title VII, and similarly limits its liability to employers with 15 or more workers." Compare 42 U.S.C. § 2000e(b) with 42 U.S.C. § 12111(5)(A). *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir.2006). Furthermore, "the procedures for instituting an ADA claim are those set forth in Title VII" as both statutes invoke the same "powers, remedies and procedures." See 42 U.S.C. § 2000e–5 and 42 U.S.C. § 12117(a). *Roche v. Supervalu, Inc.*, 1999 WL 46226, 1999 U.S. Dist. LEXIS 372 (E.D.Pa. Jan. 15, 1999)

Further, Congress derives its authority to enact many anti-discrimination statutes, such as the ADA, from the Commerce Clause of the United States Constitution.[2] U.S. Const. art. I, § 8, cl. 3. As previously mentioned, Congress created a threshold of fifteen employee in order for Title VII or the ADA to apply. This requirement

---

**1.** *Rodriguez–Fernandez v. First Med. Health Plan, Inc.*, 2010 WL 5072584, *6, 2010 U.S. Dist. LEXIS 131046, *16 (D.P.R. Dec. 10, 2010) ("[N]o personal liability can attach to employees under the ADEA or ADA."); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3rd Cir.2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA"); *Jones v. Sternheimer*, 387 Fed. Appx. 366, 368 (4th Cir.2010); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995) (noting that ADA, Title VII, and ADEA statutes are very similar and that "courts routinely apply arguments regarding individual liability to all three statutes interchangeably."; *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir.2006); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir.1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996)).

**2.** See 42 U.S.C. § 12101(b)(4) (stating that the purpose of the ADA is "to invoke the sweep of

congressional authority, including the power to enforce the fourteenth amendment and *to regulate commerce*, in order to address the major areas of discrimination faced day-to-day by people with disabilities.")(emphasis added); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)(concluding that Title VII was validly enacted under the Commerce Clause and the Fourteenth Amendment); *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 460 (6th Cir.2008) (noting that Congress passed the ADA pursuant to its authority under the Commerce Clause); *EEOC v. Ratliff*, 906 F.2d 1314, 1315 (9th Cir.1990)(stating that Congress passed Title VII pursuant to its authority under the Commerce Clause); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 311 (6th Cir.1991) (finding that Title VII and the ADEA were both enacted under the Commerce Clause).

reflects Congress's wisdom that only those companies with fifteen or more employees have the requisite substantial effect on interstate commerce to permit federal involvement to implicate either Title VII or the ADA. See Legislative History of Titles VII and XI of Civil Rights Act of 1964, at 2108 (1964) ("The bill proceeds upon a theory ... that the quantum of employees is a rational yardstick by which the interstate commerce concept can be measured.") (separate minority views of Reps. Poff and Cramer, Members, House Comm. on the Judiciary). See *Willis*, 948 F.2d at 311 (6th Cir.1991) (noting "Congress's determination in Title VII that any employer with 15 or more employees necessarily implicates interstate commerce").

■ Congress' concern with establishing the fifteen-employee benchmark in order to facilitate the necessary degree of interstate commerce to substantiate federal involvement is clearly incongruous with establishing personal and individual liability under the Commerce Clause.[3] If companies were permitted to harass or discriminate against employees at will, such conduct would have a substantial chilling effect on interstate commerce as affected discrete and insular minorities would not wish to be employed by or patronize such establishments. However, a harassing or discriminating supervisor or manager, *acting in his or her individual capacity*, will simply not be engaging in interstate commerce.[4] The harassment or discrimination of a supervisor, when acting in his or her personal capacity and not as an agent of the employer, "is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of

3. The Honorable District Judge Hector M. Laffitte eloquently argued that the fifteen-employee requirement in Title VII is inconsistent with the premise of individual liability:

  There is absolutely no mention in the statutory language or in the legislative history of Title VII's application to individual defendants. As it had with other civil rights statutes such as section 1981, Congress could have included individuals like supervisors as potential liable parties.... [T]he language of the Civil Rights Act of 1991 reflects Congress' pellucid desire to protect small corporate entitles from the burdens of litigating discrimination suits. It shields all defendants with fewer than fifteen employees from liability. 42 U.S.C.A.§ 1981(a)(3) (1994). Moreover, for defendants with more than fourteen employees, it limits the amount compensatory and punitive damages recoverable proportionally to the number of total employees. *Id.* Once again, as with Title VII, there was absolutely no discussion of expanding liability to include individual defendants. Indeed, it would be nothing short of bizarre if Congress placed such heightened emphasis and concern on limiting the damages recoverable against small corporate entities and, yet simultaneously, silently exposed all individual defendants to unlimited liability.

*Colon Hernandez v. Wangen*, 938 F.Supp. 1052, 1064–1065 (D.P.R.1996)(internal citations omitted). As Title VII and the ADA both share the fifteen-employee requirement, as previously discussed, Judge Lafitte's insightful analysis applies with equal force in the ADA context.

4. Cf. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 82 (3d Cir.2003) ( "[T]he fifteen-employee threshold appears motivated by policy—to spare small companies the expense of complying with Title VII—rather than Commerce Clause considerations."); *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 447, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003) ("Congress decided to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail.") (internal quotations and citations omitted). However, employing this rationale, the Court finds, a fortiori, that Congress would want to spare an individual, an even smaller entity than a business with less than fifteen employees, the expense of complying with anti-discrimination laws.

interstate commerce." *United States v. Lopez*, 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding that Congress exceeded its power under the Commerce Clause for the first time since 1936).

■ Due to these similarities in the Title VII and ADA statutes, as well as the constraints on federal authority pursuant to the Commerce Clause, the Court agrees with the Magistrate Judge's conclusion that individual defendants cannot be held personally liable for violations of the ADA in their personal capacity.[5]

### C.   Eleventh Amendment Immunity

■ The Court further concludes that Magistrate Judge Velez–Rive astutely identified that the Eleventh Amendment does not insulate States from liability under Title VII. In *Fitzpatrick v. Bitzer*, the Supreme Court held that Congress expressly abrogated States' sovereign immunity under the Eleventh Amendment in Title VII cases because Title VII was enacted pursuant to § 5 of the Fourteenth Amendment. 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Congress also unambiguously abrogated States' sovereign immunity under 42 U.S.C. § 12202.[6] Therefore, state entities are not afforded the protection of the Eleventh Amendment

in matters of employment discrimination under both Title VII and the ADA.[7]

### V.   CONCLUSION

For the reasons stated above, the Court determines that Magistrate Judge Velez–Rive's *Report and Recommendation* (Docket No. 33) contains no plain error and therefore **ADOPTS** the *Report and Recommendation* **IN TOTO**. Accordingly, Defendants' *Motion to Dismiss* (Docket No. 24) is **DENIED** as to co-Defendant ICF and is **GRANTED** as to co-Defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION
### INTRODUCTION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

Plaintiff Ricardo Javier Rey–Cruz (hereinafter "plaintiff Rey–Cruz"), an employee of defendant Forensic Science Institute, filed a complaint under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (hereafter "ADA") for alleged employment discrimination on account of disability.[1]   Plaintiff Reyes–Cruz

---

**5.**  Finding that there is no individual liability under Title VII or the ADA, the Court does not need to examine the individual Defendants' claims of qualified immunity.

**6.**  The ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."   42 U.S.C. § 12202.   This statement is "an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 154, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006).

**7.**  "Where, as here, a [Magistrate] has produced a first-rate work product, a reviewing

tribunal should hesitate to wax longiloquence simply to hear its own words resonate."   *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993).   "The Court need not go further for it refuses to write 'at length to no other end than to hear its own words resonate.' "   *Vega–Morales v. Commissioner of Social Security*, 380 F.Supp.2d 54, 60 (2005)(*quoting Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F.3d 218, 220 (1st Cir.1996)).

**1.**  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (prohibiting employment discrimination on the basis of sex, race, religion, national origin); ADA, 42 U.S.C. §§ 12131–12165 (prohibiting discrimination by government entities on the basis of disability by employers).

submits he suffers from sleep apnea and requested, as accommodation to this condition, that he not be assigned to the third work shift, the "graveyard" shift. Upon being changed for said shift and other alleged acts of retaliation, plaintiff Rey–Cruz filed claims against defendant Forensic Science Institute and several defendants who were considered supervising employees of plaintiff Rey–Cruz. (Docket No. 1). Upon having previously filed grievance through the Union delegate and thereafter through the state Department of Labor, plaintiff Rey–Cruz was provided with a right to sue letter.

On November 1, 2010, defendant Forensic Science Institute and co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza (hereafter "defendants") filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] The request for dismissal is based on plaintiff Rey–Cruz having failed to submit in the allegations of the complaint a claim for which relief may be granted, succinctly a *prima facie* case of discrimination because of disability. As such, defendants claim the complaint should be dismissed. Defen-

dants also assert an Eleventh Amendment immunity basis for dismissal. (Docket No. 24).

On December 27, 2011, plaintiff Rey–Cruz filed his response to above defendants' request for dismissal. (Docket No. 27).

On April 4, 2011, the Court referred above motions to this Magistrate Judge for report and recommendation. (Docket Nos. 31 and 32).

A perusal of the complaint as filed does not address any claims that could be construed under Section 1983 of the Civil Rights Act as to individual co-defendants in their personal capacities nor as to any other pendent state law action, regardless of a passing reference to jurisdiction under 28 U.S.C. § 1367.[3] Still, the parties attempted to discuss in the Motion to Dismiss and the opposition filed by plaintiff Rey–Cruz reference to claims other than Title VII and ADA, which this Magistrate Judge considers not relevant to this report and recommendation inasmuch as such claims were not raised in the Complaint. (Docket No. 1).[4]

---

**2.** Said rule provides:

... (b) How to Present Defenses. 'Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

...

(6) failure to state a claim upon which relief can be granted ...

**3.** "... The acts of discrimination include the failure by the Defendant for reasonable accommodation, the Plaintiff was subject to and wrongful action is based on a federal statute applicable to the facts of this case. (Title VII of the Civil Rights Act). This court also has jurisdiction over all of the state claims set forth herein pursuant to 28 U.S.C. § 1367." *Docket No. 1, Complaint,* p. 2. Even a perusal of the twenty-one (21) attachments to the complaint and the extra-judicial claims therein submitted, if any, which may be construed

from these documents, fails to raise any other claim but one for discrimination due to disability and denial of reasonable accommodation.

**4.** Plaintiffs opposition to the Motion to Dismiss refers to declaratory, equitable [sic] relieve, and damages under the constitutional provisions of the of the First, Fifth and Fourteenth Amendment and under Section 1367 of the Judiciary Act for violations to the Constitution of Puerto Rico sections 4 and 7 of Article II and claims under Puerto Rico Persons with Disabilities Act and Sections 1802 and 1803 of Puerto Rico Civil Code. *Plaintiff's Opposition* p. 2 ¶¶ a-c. These provisions are not included in the Complaint filed before this Court and no pages were omitted for these are properly numbered sequentially from 1–15. Even if counsel for plaintiff may have thought of these claims and provisions in

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissal may be warranted for failure to state a claim upon which relief can be granted. To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiffs favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barcelo v. Hernández–Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (*quoting Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. *Abbott, III v. United States*, 144 F.3d 1, 2 (1st Cir.1998) (*citing Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996)).

The Supreme Court most recent opinion changes the standard for a motion to dismiss so that plaintiff will now have to include more information in the pleadings if he/she wants to survive a 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).[5]

The First Circuit has cited to this decision and noted this new standard in *Rodríguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 94–95 (1st Cir.2007), copied in part below:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible .entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Twombly*, 127 S.Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession [* *8] for 50[*96] years, this famous observation has earned its retirement." *Id.* at 1968, 1969.

Similarly under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the factual statements of the complaint are considered true, indulging every reasonable inference helpful to plaintiffs' cause. However, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions and mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In addition, most recently the Court of Appeals for the First Circuit examined dismissal under *Twombly*[6] and *Iqbal*,[7] al-

---

preparation of the Complaint, these were never placed in the instant Complaint. (Docket No. 1).

**5.** No heightened fact pleading of specifics is required but only enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic*, 127 S.Ct. at 1974.

**6.** In *Twombly*. the Supreme Court affirmed the dismissal of an anti-trust class action suit filed under Section 1 of the Sherman Act.

**7.** *Iqbal* involved a Section 1983 filed by a detainee who had been held in a detention center in the wake of the September 11, 2011, terrorist attacks and submitted the detention

lowing for survival of dismissed political discrimination claims and noticed the pleading standard was considered sufficient under a plausible claim examination. *See Carmen M. Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1 (1st Cir.2011).

We shall thus examine the request for dismissal under the most recent applicable case law as to those claims submitted by plaintiff Rey–Cruz under Title VII and ADA as presented in the Complaint filed before this Court.

## LEGAL ANALYSIS

### A. Dismissal of Title VII of the Civil Rights Act.

#### 1. *Prima Facie* Claims.

Plaintiff Rey–Cruz Complaint is predicated on violations during his public state employment by the defendant Forensic Science Institute and supervisors therein to ADA and the encompassing Title VII. As a result of denying plaintiff the accommodation requested because of his condition of sleep apnea, Rey–Cruz submits he was discriminated in employment and retaliated for having complained due to his disability.

Defendants' request for dismissal of plaintiff Rey–Cruz's claims is that the narrative and factual presentation of the Complaint is devoid of any factual content to allow the court to draw reasonable inference that defendants are liable for the misconduct alleged nor the Complaint presents a claim for relief that is plausible from its face. Defendants consider plaintiff has done nothing more than provide a recitation of the elements of the cause of action he wishes to invoke. (Docket No. 24, ¶ p. 13).

As alleged in the Complaint, plaintiff Rey–Cruz claims events leading to his discrimination under Title VII and ADA. For this purpose, we follow the process of accepting as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader. *S.E.C. v. Tambone,* 597 F.3d 436 (1st Cir. 2010). A complaint need not plead detailed factual allegations but must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 129 S.Ct. at 1949.

Contrary to defendants' assertion, an examination of the Complaint provides plaintiff Rey–Cruz is raising a factual predicate for a violation of Title VII of the Civil Rights Act and the ADA because of employment discrimination in denying a requests for reasonable accommodation for his condition of sleep apnea by assigning him the work shift from 10:00 p.m. to 6:00 a.m., that is the night shift referred to as "graveyard shift" or shift 3.[8] Other acts of defendants are considered as either denial or retaliation for the submission of his requests to accommodate his perceived disability.

In summary, plaintiff Rey–Cruz has submitted in the Complaint that, while being employed by defendant Forensic Science Institute, he requested initially orally to his then supervisor Nelson Morales–Huertas and then in writing, with copies of medical evidence, around 2007 to be accommodated because of his sleep apnea condition by not being assigned the graveyard shift or shift 3. Plaintiff submits he has a diagnostic test for said condition. (Docket No. 1, p. 3 ¶ 3).

was based from unconstitutional racial, ethnic and religious discrimination.

**8.** Plaintiff Rey–Cruz was willing to take any other shift, including staying over the conclu-

sion of the same if necessary and required, which included shifts 1 and 2.

Plaintiff further submits in the Complaint filed as description of discriminatory acts, some of the following events, to wit:

The request for accommodation was not followed when on several occasions plaintiff Rey–Cruz was assigned shift 3. (Docket No. 1, p. 4 ¶ 4; p. 5 ¶ 8; p. 6 ¶ 6; p. 7 ¶ 12; p. 8 ¶ 19).

Upon plaintiff filing notice of complaint against the Forensic Science Institute, he was threatened by co-defendant Francisco J. Davila–Toro on February 12, 2007, for filing same. (Docket No. 1, p. 5 ¶ 6; Attachment 17).

Plaintiff was subject of employment discrimination and retaliation by being subject to an administrative investigation of which he was not informed when his firearm was retained by authorities for unrelated work issues. (*Id.* p. 6 ¶ 10).

The work shift assigned was changed by hand to work shift 3 even when the list did not contain Rey–Cruz's name at the time for said shift. (*Id.* p. 6 ¶ 11).

Plaintiff's medical condition was not recognized as an impairment deserving accommodation but no written denial was ever produced. (Complaint p. 4 ¶ 4).

The employer instigated for criminal charges to be filed against plaintiff Rey–Cruz in regards to plaintiff's intervention outside work with some civilians during the commission of a domestic violence offense although a district attorney had found plaintiffs action had avoided physical injury against a victim. (*Id.* p. 8 ¶ 15).

Plaintiff was denied access to his personnel file; (*Id.* p. 8 ¶ 17).

Plaintiff was not allowed to return to work after discharged from treatment by the State Insurance Fund. (Complaint p. 9 ¶¶ 20 and 21).

Upon relapse of his health condition and while under private treatment, plaintiff Rey–Cruz was not guaranteed the statutory one-year retention of employment while undergoing treatment at the State Insurance Fund. (*Id.* ¶¶ 19–21).

Plaintiff was suspended from employment although pending a hearing with the Department of Labor because of previous correspondences from the agencies as to intent to terminate him. (Complaint p. 10 ¶ 23).

A mistake by the employer in the reasons for plaintiff being unemployed caused him to be denied unemployment benefits upon indicating he had resigned instead of being dismissed which forced plaintiff to resort to appellate administrative proceedings; (Complaint p. 10 ¶ 24, p. 11 ¶¶ 25, 26 and 31).

The employer failed to appear at the appellate hearing with the Department of Labor; after plaintiff had filed a request with injunction with the state court as to which plaintiff received a letter of disciplinary action and dismissal without having previously received any progressive discipline or any disciplinary action due to performance, insubordination or violation of employment rules. (Complaint pp. 11–12 ¶ 27, 30, 32, 33 and 38).

Considering the above summary of the allegations filed by plaintiff Rey–Cruz, and upon a *prima facie* examination of the Complaint, we opine it submits sufficient factual predicates for a plausible cause of action as to claims under the ADA, and as a consequence thereof of Title VII, that are particularly identified, as well as the corresponding actors, the dates and narrative of events, as well as a chronological depiction of the causal connection with plaintiffs grievances through the Union delegate, the Department of Labor, and the Department of Justice.

Following *Twombly,* the above contentions meet the requirement that a plaintiff

should show a plausible entitlement to relief, which is not the same as imposing a "heightened pleading requirement." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Said determination was not considered inconsistent with a prior determination that a court may not insist on the allegation of "specific facts" that would be necessary to prove the claim at trial.

In a motion to dismiss legal conclusions—such as merely indicating having endured employment discrimination because of disability, without more—are not entitled to a presumption of truth. Factual allegations as to the particular acts by each defendant, with a date proximity and adverse employment consequences are geared towards assertions of facts which at the stage of a Rule 12(b)(6) request for dismissal, are entitled to a presumption of truth. If these factual allegations, taken as true, state a facially plausible legal claim, the court is allow to draw the reasonable inference the defendant is liable for the misconduct alleged. *Iqbal,* 129 S.Ct. at 1949–50.

At this stage, in the absence of discovery and additional legal contentions more proper of summary judgment, under Fed. R.Civ.P. 12(b)(6), dismissal is not appropriate for having failed to submit a cause of action that would entitle plaintiff to relief.

Thus, dismissal is not warranted as to defendants' allegations that plaintiff has failed to comply with the requirements of Fed.R.Civ.P. 12(b)(6).

### 2. Individual Co-defendants.

Insofar as individual co-defendants' request for dismissal, the finding that plaintiff has established a *prima facie* case of Title VII and ADA claims does not defeat the issue of individual liability as to the herein appearing co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza.

The ADA and its legislative history clearly show the intention to protect qualified individuals from adverse job actions arising from the employees' relationships with particular disabled persons. Although the Court of Appeals for the First Circuit has not yet ruled on individual liability of ADA, as it has already done in regards with Title VII, other circuit courts have found there is none. *Albra v. Advan, Inc.,* 490 F.3d 826 (11th Cir.2007) (cited with approval *Fantini v. Salem State College,* 557 F.3d 22, 29 (1st Cir.2009)). Since ADA definition of employer is similar to the one under Title VII and the Age Discrimination in Employment Act (hereafter "ADEA"),[9] it seems proper to find ADA does not provide for individual liability as to discrimination nor the retaliation claims.[10]

As to Title VII, it has already been ruled there is no individual liability for liability rests with the employer. *Fantini v. Salem State College,* 557 F.3d 22 (1st Cir.2009).[11] Most circuit courts have simi-

---

**9.** *See* ADEA, Title 29, *United States Code,* Section 630(b).

**10.** ADA inclusion of the term "person" was discussed but still determined the use of "person" not dispositive of whether an individual may be personally liable for violating the provisions. Still, since the remedies of ADA's anti-relation in employment are those already incorporated for Title VII, and it has already been determined no individual liability ensues

for Title VII, there is no sound reason to read ADA any different.

**11.** Many other courts have concluded that the ADA does not permit individual liability. *See, e.g., Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir.2010); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995); *Martin v. Town of Westport,* 329 F.Supp.2d 318, 332 (D.Conn.2004); *Diggs v. Town of Manchester,* 303 F.Supp.2d 163, 175

larly held there is no individual liability under Title VII and, thus, no personal liability of the co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza may be determined as to the Complaint filed by plaintiff under Title VII.

Accordingly, dismissal of claims against these individual co-defendants for lack of individual liability as to Title VII and ADA claims in the Complaint is warranted.

## B. Eleventh Amendment Immunity.

Defendants move for dismissal based on Eleventh Amendment immunity since plaintiff Rey–Cruz may not claim monetary damages as to defendants in their official capacities for it would result in payment by the real party in interest being the Commonwealth of Puerto Rico, which ultimately is covered by Eleventh Amendment.

The Eleventh Amendment proscribes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." 1 U.S.C. Const. Amend. XI. The Eleventh Amendment bars suits from being brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to being sued. The Eleventh Amendment has also been interpreted to bar suits for monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987).

Eleventh Amendment immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico*, 818 F.2d 1034, 1036 (1st Cir.1987); *see Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Sánchez–López v. Fuentes Pujols*, 247 F.Supp.2d 37 (D.Puerto Rico 2002).

Notwithstanding the above discussed, Congress amended the Civil Rights Act of 1964 in 1972 to include public employees, allowing for the prosecution of private rights of action against States that practiced discrimination, but limited to equitable remedies. Congress added relief for compensatory damages in 1991. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1072 (1991) (*codified* in 42 U.S.C. § 1981a(a)(1). Thus, in a similar vein it has been found that Congress has expressly waived the immunity of the State insofar as cases under Title VII where a state government is sued for certain actions of employment discrimination. *Espinal–Domínguez v. Commonwealth of Puerto Rico*, 352 F.3d 490 (1st Cir.2003). *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (*concluding* that Title VII's authorization of federal-court jurisdiction to award money damages against a state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment since Congress was exercising its § 5 remedial powers). It then follows that the substantive provisions of the Fourteenth Amendment themselves offer a powerful reason to provide a federal forum. *Idaho v. Coeur d'Alene Tribe of*

---

(D.Conn.2004); *Kennedy v. St. Francis Hosp.,*  225 F.Supp.2d 128, 144 n. 21 (D.Conn.2002).

*Idaho,* 521 U.S. 261, 279, 117 S.Ct. 2028, 2039, 138 L.Ed.2d 438 (1997).[12]

Since the only claims applicable to the complaint filed by Rey–Cruz relate to Title VII and the ADA, Eleventh Amendment immunity is not applicable upon Congress having abrogated state immunity and dismissal on such Eleventh Amendment grounds would not be warranted.

## C. Qualified Immunity.

Defendants have requested qualified immunity from personal liability as to those officers or supervisory employees included in the herein Complaint filed by plaintiff Rey–Cruz. However, having examined above that only Title VII and ADA claims have been raised in the complaint filed by plaintiff Rey–Cruz, for which these co-defendants may not be sued individually for lack of personal liability under said federal provisions, qualified immunity need not be further discussed. Individual co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Davila and José L. Carrasquillo–Pedraza have already been considered not covered by Title VII and ADA claims for lack of individual liability, making the qualified immunity issues raised to become moot.

Further, defendants Conte–Miller and Hernández–Davila had begun their tenure with the Forensic Science Institute by January and February 2009, long after plaintiff Rey–Cruz had been terminated from his position. Plaintiffs opposition has not rebutted this averment, and thus, only any possible declaratory or injunctive action could be appropriate, as to them insofar as any surviving or existing claim for reinstatement to the position, which has not been submitted nor prayed for in the Complaint since only monetary compensation appears.[13]

## CONCLUSION

In view of the foregoing, it is recommended the Motion to Dismiss of defendant Forensic Science Institute and individual co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza (Docket No. 24) be GRANTED IN PART AND DENIED IN PART as follows:

—DENIED as to the defendant Forensic Science Institute.

—GRANTED as to the individual co-defendants Dr. María S. Conte–Miller, Juan E. Hernández–Dávila and José L. Carrasquillo–Pedraza.

IT IS SO RECOMMENDED.

The parties have a specific shorter term to oppose this report and recommendation since the presiding judge has filed a notice with the order of referral of April 4, 2011, indicating it had set aside the three (3) day term provided by Local Rule 5.1. and reducing to five (5) business days the time to object.[14]

**12.** *See Espinal–Domínguez,* 352 F.3d at 490 (discussing aspects of Title VII and the Eleventh Amendment as to the Commonwealth of Puerto Rico).

**13.** The Complaint does not present a prayer for any relief the Court may deem appropri-

ate, and thus, only the specific request for monetary compensation can be construed from its pleadings.

**14.** The order indicates:

The parties are reminded that any objections to the Magistrate's Report and Recom-

mendation must be filed with the Clerk of Court "within fourteen (14) days after being served with a copy thereof," **which the Court has reduced to five (5) business days** in the instant case. Fed.R.Civ.P. 72(b)(2); Fed. R.Civ.P. 6(c)(1)(B), and Local Rule 72(d); *see also* 28 U.S.C. § 636(b)(1). Fed.R.Civ.P. 72(b) "adds a provision **not in the statute**, by stating that 'a party may respond to another party's objections within [14 days] of being served with a copy thereof.' " ... The legislative history of Section 636(b)(1)(C) reveals that Congress intended that these matters be governed by local rules." (Emphasis ours). 12 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2d § 3070.1. Moreover, Fed.R.Civ.P. 6(c)(1)(B) allows the Court to change the time set by the Federal Rules of Civil Procedure, with the exceptions provided by Fed.R.Civ.P. 6(b)(2).

**The parties are forewarned that no extensions of time shall be authorized to the parties to file objections to the R & R and that failure to submit the objections within the deadline provided shall be deemed by the Court as objections being waived. Furthermore, the Court hereby set aside the three (3) days term provided by Local Rule 5(e).** *See, U.S. v. Diaz–Villafane,* 874 F.2d 43, 46 (1st Cir.1989)(*quoting Braxton v. Bi–State Dev. Agency,* 728 F.2d 1105, 1107 (8th Cir.1984) "[i]t is for the district court to determine what departures from its rules may be overlooked")). No replies to the objections to an R & R will be allowed without leave of Court, as provided by Local Rule 7(c). Furthermore, the provisions of Local Rule 7(c) are subject to the time constraints of the Court, such as the reportable date of the motion subject of the R & R, and the provisions of Local Rule i(f). (emphasis in original). Docket No. 31.