**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NANCY WALSH,

          *Plaintiff-Appellant,*

    v.

NEVADA DEPARTMENT OF HUMAN
RESOURCES, Division of Healthcare,
Finance and Policy; STATE OF
NEVADA,

          *Defendants-Appellees.*

No. 04-17440

D.C. No.
CV-04-00459-ECR

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Submitted November 17, 2006*
San Francisco, California

Filed December 18, 2006

Before: John T. Noonan, Emmett Ripley Cox,** and
Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Emmett Ripley Cox, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

**COUNSEL**

Kenneth J. McKenna, Reno, Nevada, for the plaintiff-appellant.

Cynthia Pyzel, Chief Deputy Attorney General, State of Nevada, for the defendants-appellees.

**OPINION**

NOONAN, Circuit Judge:

Nancy Walsh appeals the dismissal of her suit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a), against the State of Nevada, the State Department of Human Resources, and individual employees of the

Department. Holding that the state defendants are immune and that the individuals cannot be sued for money damages, and that the request for injunctive relief suffered several infirmities, we affirm the judgment of the district court.

## FACTS

Walsh began working for the Nevada Department of Human Resources ("Department") in February 2001. Several years before her employment, Walsh was diagnosed with obsessive-compulsive disorder ("OCD"), an anxiety disorder. For two years, she made no request for special accommodation and received "solid" performance reviews.

In March 2003, Walsh began working directly for program specialist Jeri Bennett. Under Bennett's supervision, Walsh experienced increased anxiety and depression, as well as a return of ritualistic behaviors such as counting and checking. On April 16, Walsh and Bennett had an altercation that resulted in an investigation by Bennett's supervisor, Social Services Chief Tina Gerber-Winn. On April 21, 2003, Walsh wrote a memo informing Gerber-Winn of her OCD. She asked to report to a different supervisor, and to be "placed in a quiet atmosphere, away from traffic areas." On April 24, Gerber-Winn issued Walsh a written reprimand for her "refusal to comply with a reasonable and proper order or instruction from supervisor" during the April 16 altercation with Bennett.

On April 29, Walsh obtained a note from her physician stating that she was under his care for OCD and that "she would be a more productive employee" with a "(1) more quiet work environment; [and a] (2) change in supervisor."

On July 15, Walsh's supervisors placed cubicles around her workspace. Bennett stated in front of Walsh's co-workers that the cubicles were installed at Walsh's request. The cubicles failed to provide Walsh a quiet work environment. Bennett

refused Walsh's "numerous" requests for meetings to discuss her disability. Walsh, following orders from her physician and nurse practitioner, did not report to work from July 31 until September 22. On August 11, Walsh received a phone call from a colleague informing her that Bennett had been discussing Walsh's absence and possible termination with other staff members.

The following year, on June 24, 2004, Walsh's doctor ordered her not to return to work. Her employment with the Department ended on July 1, 2004.

## PROCEEDINGS

On December 13, 2003, Walsh filed a Charge of Discrimination with The Nevada Equal Rights Commission and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that the Nevada Department of Human Resources had violated the ADA. The EEOC issued Walsh a Dismissal and Notice of Rights on June 7, 2004.

On August 25, 2004, Walsh filed suit in federal court. Naming the State of Nevada and the Department as defendants, she alleged that her supervisors had discriminated against her on the basis of her disability in violation of the ADA. In her complaint, she claimed that she was discriminated against because once supervisors were made aware of her condition, they gave her a baseless reprimand, yelled at her regarding performance, refused meetings to discuss her condition, denied accommodation for her disability, harassed her with statements regarding her condition and possible termination, and created a work environment that exacerbated her disability. She requested four forms of relief: (1) compensatory and/or punitive damages, (2) economic damages, (3) costs and attorney's fees, and (4) "such other and further relief, including injunctive relief, to force the defendant to adopt and enforce lawful policies regarding discrimination based on disability."

The State moved for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on September 15, 2004. It characterized Walsh's claim as a Title I ADA claim since it arose out of her employment. Citing *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the State argued that it was immune from suits brought under Title I of the ADA.

On October 4, 2004, in a "Motion to File First Amended Complaint and Response to Defendant's Motion for Judgment on the Pleadings," Walsh sought to add Bennett and Gerber-Winn as individual defendants. Walsh did not address any of the arguments presented in the State's Rule 12(c) motion.

In its Opposition to Walsh's motion to amend her complaint, filed October 15, 2004, the State argued that not only was it immune from suit under *Garrett*, individual employees were also immune from ADA suits under *Miller v. Maxwell's International, Inc.* 991 F.2d 583 (9th Cir. 1993).

On November 12, 2004, the district court granted the State's Motion for Judgment on the Pleadings and denied Walsh's Motion to File First Amended Complaint. The court entered judgment in favor of the State and against Walsh. In its Minute Order, the court held that the State was immune from ADA suits under *Garrett* and that individual employees were not personally liable for ADA violations under *Miller*. The court also asserted that "it [did] not appear that further amendment of the complaint would enable plaintiff to state a viable cause of action."

Walsh filed a timely Notice of Appeal on December 7, 2004.

## ANALYSIS

*State Immunity*. A judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is reviewed de novo. *Living Designs,*

*Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).

**[1]** Title I of the ADA enables individuals who have suffered employment discrimination because of their disabilities to sue employers for damages and injunctive relief in federal court. 42 U.S.C. § 12117(a). State governments can invoke the Eleventh Amendment's guarantee of sovereign immunity against Title I suits seeking money damages. *Garrett*, 531 U.S. at 360. Sovereign immunity, however, does not bar Title I suits against state officials for prospective injunctive and declaratory relief. *Id.*, at 374 fn. 9; *see also Ex parte Young,* 209 U.S. 123 (1908).

Walsh does not dispute that *Garrett* shields the State from her claims for money damages. She argues instead that judgment on the pleadings was improperly granted because she had also asserted a claim for injunctive relief that could overcome the sovereign immunity bar. Her argument fails, for two reasons: First, while Walsh arguably made a request for injunctive relief in her pleadings, she lacked standing to bring a claim for the type of injunctive relief she sought. Second, she failed to raise the issue of injunctive relief before the district court and is barred from doing so on appeal.

**[2]** The Federal Rules of Civil Procedure describe "a liberal system of 'notice pleading.' " *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Fed. R. Civ. P. 8(a) requires a complaint to contain only (1) a statement of jurisdiction, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for judgment for the relief the pleader seeks." A claimant's "short and plain" statement need only give "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

**[3]** In her prayer for relief, Walsh makes an explicit claim for "injunctive relief to force the defendant to adopt and

enforce lawful policies regarding discrimination based on disability." This statement clearly fulfills Rule 8(a)(3)'s requirement of a "demand for judgment." Nonetheless, Walsh's single reference to injunctive relief is insufficient because it is unsupported by any facts or allegations regarding the Department's failure to adopt or enforce discrimination policies. Walsh made no assertions that the discrimination she suffered was caused by the failure to enforce a state policy, or that such discrimination could be cured by an official policy.

[4] Even if Walsh properly put the Department on notice of her claim, she lacked standing to request injunctive relief to force the Department to adopt and enforce lawful policies regarding discrimination based on disability. To have standing to bring a claim for relief, a plaintiff must show that she has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief she seeks. *Thinket Ink Info. Res., Inc. v. Sun Microsytems, Inc.*, 368 F.3d 1053, 1057 (9th Cir. 2004).

[5] Walsh's complaint satisfies the first two standing prongs, since she asserts that the Department discriminated against her due to her disability. But her complaint does not satisfy the third. Walsh is no longer an employee of the Department. She admits that her employment ended in 2004. There is no indication in the complaint that Walsh has any interest in returning to work for the State or the Department. Therefore, she would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work. Some case law in this circuit indicates that a non-employee may have standing to sue for injunctive relief against an employer, but those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer. *See Freitag v. Ayers,* ___ F.3d ___ , 2006 WL 3110975 (9th Cir. 2006)*; Nanty v. Barrows Co.*, 660 F.2d 1327 (9th Cir. 1981). Walsh, there-

fore, lacked standing to sue for injunctive relief from which she would not likely benefit.

**[6]** Even if Walsh had properly pleaded her claim for injunctive relief, she failed to preserve the issue for appeal. Issues not presented to a district court generally cannot be heard on appeal. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). No "bright line" exists to determine whether an issue has been properly raised below, but "a workable standard is that the issue must be raised sufficiently for the trial court to rule on it." *Id.* A plaintiff who makes a claim for injunctive relief in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss on the grounds of immunity from money damages, has effectively abandoned his claim, and cannot raise it on appeal. *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026 (4th Cir. 1994). Without any "overture to the district court to suggest that [the plaintiff] had a continuing interest in pursuing injunctive relief which would survive the immunity defense . . . the district court had no reason to consider the contention that the claim for injunctive relief could not be dismissed." *Id.* at 1031. By failing to raise her injunctive relief claim before the district court, Walsh forfeited the right to raise her claim on appeal.

**[7]** *Individual Liability*. This circuit has never addressed whether individuals may be personally liable under Title I of the ADA. The circuit has ruled that individuals may not be sued for damages under an analogous statute, Title VII of the Civil Rights Act of 1964 ("Title VII"). *See Miller*, 991 F.2d at 587. In *Miller*, the court reasoned that Congress limited liability under Title VII to employers with 15 or more employees because it "did not want to burden small entities with the costs associated with litigating discrimination claims." *Id.* It was therefore "inconceivable" that Congress intended to allow individual employees to be sued under Title VII. *Id.*

Walsh argues that *Miller* is not applicable to her case since it does not address the ADA. *Miller* does not address the

ADA directly, but other circuit courts and numerous district courts have applied its reasoning to protect individuals from ADA liability. *See, e.g., Koslow v. Commonwealth of Pennsylvania,* 302 F.3d 161, 177 (3rd Cir. 2002); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Butler v. City of Prairie Village,* 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir. 1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-80 (7th Cir. 1995); *Ostrach v. Regents of the Univ. of California*, 957 F. Supp. 196, 200 (E.D. Cal. 1997).

**[8]** The statutory scheme and language of the ADA and Title VII are identical in many respects. Specifically, the ADA's definition of "employer" tracks that of Title VII, and similarly limits liability to employers with 15 or more workers. *Compare* 42 U.S.C. § 2000e(b) *with* 42 U.S.C. § 12111(5)(a). Furthermore, Title I of the ADA invokes the same "powers, remedies and procedures" as those set forth in Title VII. *See* 42 U.S.C. § 12117(a) (adopting 42 U.S.C. § 2000e-4 - 2000e-9).

**[9]** Because Title I of the ADA adopts a definition of "employer" and a remedial scheme that is identical to Title VII, *Miller's* bar on suits against individual defendants also applies to suits brought under Title I of the ADA. The district court was correct when it held that individual defendants cannot be held personally liable for violations of the ADA.

For the foregoing reasons, the judgment of the district court is AFFIRMED.