**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GREGORY M. GARVIN, Acting United States Trustee for Region 18,
*Appellant*,

v.

COOK INVESTMENTS NW, SPNWY, LLC; COOK INVESTMENTS NW, FERN, LLC; COOK INVESTMENTS NW, LLC; COOK INVESTMENTS NW, DARR, LLC; COOK INVESTMENTS NW, ARL, LLC,
*Appellees.*

No. 18-35119

D.C. No.
3:17-cv-05516-BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted December 3, 2018
Seattle, Washington

Filed May 2, 2019

Before: Susan P. Graber, M. Margaret McKeown,
and Morgan Christen, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Bankruptcy

The panel affirmed the district court's decision affirming the bankruptcy court's order confirming the second amended Chapter 11 plan of five real estate holding companies.

One of the debtors leased property to a company that used the property to grow marijuana. The United States trustee objected that the lease violated federal drug law, and so the plan was unconfirmable under 11 U.S.C. § 1129(a)(3) because it was proposed by means forbidden by law.

The panel held that § 1129(a)(3) directs bankruptcy courts to police the means of a reorganization plan's proposal, not its substantive provisions. The panel affirmed confirmation of the plan because it was not proposed by any means forbidden by law.

## COUNSEL

Sonia Carson (argued) and Mark B. Stern, Appellate Staff; Annette L. Hayes, Acting United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Wendy Cox, Trial Attorney; P. Matthew Sutko, Associate General Counsel; Ramona D. Elliott, Deputy Director/General

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Counsel; Department of Justice, Executive Office for United States Trustees, Washington, D.C.; for Appellant.

James L. Day (argued) and Aditi Paranjpye, Bush Kornfeld LLP, Seattle, Washington, for Debtors-Appellees.

## OPINION

McKEOWN, Circuit Judge:

Facing insolvency, five real estate holding companies owned and managed by Michael Cook (collectively, "Cook" or the "Cook companies") sought Chapter 11 protection. Cook's foray into Chapter 11 was by most standards a resounding success. It culminated with the Second Amended Joint Debtors' Plan of Reorganization ("Amended Plan"), which paid all creditors in full and provided for Cook to continue as a going concern. The Amended Plan was confirmed by the bankruptcy court.

But now the United States Trustee ("Trustee") asks that the Amended Plan go up in smoke, because one of the Cook companies leases property to N.T. Pawloski, LLC ("Green Haven"), which uses the property to grow marijuana. The Trustee complains that, even if Green Haven's business complies with Washington law, the lease itself violates federal drug law. The Trustee reasons that this violation proves the Amended Plan was "proposed . . . by . . . means forbidden by law" and is thus unconfirmable under 11 U.S.C. § 1129(a)(3).

The problem with the Trustee's theory is that it ignores the plain text of § 1129(a)(3), which directs bankruptcy courts to police the means of a reorganization plan's *proposal*, not its substantive provisions. Resolution of this

appeal rests on a straightforward question of statutory interpretation rather than on any conflict between federal and state drug laws.  We affirm confirmation of the Amended Plan because it was not proposed "by any means forbidden by law."

## BACKGROUND

Cook Investments NW, DARR, LLC ("Cook DARR"), one of the Cook companies, owns commercial real estate in Darrington, Washington (the "Darrington Property").  Cook DARR leased the Darrington Property to two tenants, one of which was Green Haven.  The lease with Green Haven (the "Green Haven Lease") provides that Green Haven will use the Darrington Property exclusively as a marijuana establishment.  Although Green Haven appears to be in compliance with Washington law, the Green Haven Lease puts Cook in violation of the federal Controlled Substances Act, 21 U.S.C. §§ 801–971, which prohibits "knowingly . . . leas[ing] . . . any place . . . for the purpose of manufacturing, distributing, or using any controlled substance," *id.* § 856(a)(1).

In 2009, one of the Cook companies defaulted on a loan from Columbia State Bank.  The loan was secured by Cook's real estate holdings, including the Darrington Property.  The bank won default judgments against Cook in state court.  Although Cook and the bank reached forbearance agreements, Cook failed to fulfill the agreements' terms.  The bank then obtained state-court orders appointing receivers for Cook's properties.  At that point, all of the Cook companies filed Chapter 11 bankruptcy petitions, which the bankruptcy court ordered jointly administered.

The Trustee filed a motion to dismiss Cook DARR's Chapter 11 case, asserting that the Green Haven Lease

constituted gross mismanagement and thus cause to dismiss under 11 U.S.C. § 1112(b). The bankruptcy court denied the motion to dismiss, but with leave to renew at the plan confirmation hearing.

Cook filed the Amended Plan, which provides for repayment of all creditors' claims in full and for Cook to continue as a going concern. The Amended Plan incorporates by reference an earlier Chapter 11 Plan Agreement between Cook and Columbia State Bank, but in the Amended Plan Cook rejected the Green Haven lease and structured the plan so that his monthly obligations would be paid without revenue from Green Haven. Cook's counsel also explained at argument that, pursuant to the Amended Plan, Cook's other tenants pay their rent directly to Columbia State Bank in satisfaction of its claim, while Green Haven rents were presumably paid directly to Cook.

The bankruptcy court confirmed the Amended Plan, over the Trustee's objection that it violated § 1129(a)(3)'s requirement that a plan be "proposed in good faith and not by any means forbidden by law." The Trustee was the only objector; Cook's creditors fully supported the Amended Plan, which satisfactorily provided for their repayment. Because the Trustee failed to renew its motion to dismiss at the confirmation hearing, the district court affirmed the denial of the motion to dismiss Cook DARR's case. Following confirmation, the Trustee moved for a stay, but the district court denied the request. As a result, Cook has continued to make payments pursuant to the Amended Plan during the pendency of this appeal. The unsecured creditors have been repaid and the secured creditor, Columbia State Bank, is in the process of being repaid.

### ANALYSIS

On appeal, the Trustee first challenges the bankruptcy court's refusal to dismiss Cook DARR under § 1112(b) for "gross mismanagement of the estate." 11 U.S.C. § 1112(b)(4)(B). We need not decide the merits of this issue because, like the district court, we conclude the Trustee waived the argument by failing to renew its motion to dismiss.

The bankruptcy court initially denied the motion to dismiss but explicitly invited the Trustee to renew the motion at the plan confirmation hearing. The Trustee chose, at its peril, not to do so. As the district court put it: "The Trustee failed to renew the motion or subsequently raise the gross mismanagement argument. Although the Debtors fail to raise waiver, it seems to be plain error for this Court to reverse the bankruptcy court's denial when the Trustee failed to renew its motion." This failure was especially significant because it meant the bankruptcy court had no opportunity to consider whether the claimed gross mismanagement had been "cured." As a consequence, neither the bankruptcy court, nor the district court, nor this court could properly determine the applicability of the exception to dismissal for "unusual circumstances." *See* 11 U.S.C. § 1112(b)(2) (exception to dismissal for unusual circumstances applies only if, *inter alia*, cause for dismissal "will be cured within a reasonable period of time"); *cf. Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that a claim raised in the complaint was waived when it was not re-raised in response to a motion to dismiss, because "the district court had no reason to consider the contention that

the claim . . . could not be dismissed" (internal quotation marks omitted)).**[1]**

We therefore turn to the issue of confirmation. To be confirmed, the Amended Plan had to satisfy § 1129(a), which provides that "[t]he court shall confirm a plan only if" sixteen enumerated requirements are met. The third requirement is that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Only the second prong is at issue here. Because it appears that Cook continues to receive rent payments from Green Haven, which provides at least indirect support for the Amended Plan, the Trustee asserts that it was "proposed . . . by . . . means forbidden by law." 11 U.S.C. § 1129(a)(3).

We determine de novo the proper interpretation of § 1129(a)(3). *See Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 997 (9th Cir. 2000) (reviewing de novo the bankruptcy court's interpretation of the Bankruptcy Code). Whether the Amended Plan was confirmable depends on whether § 1129(a)(3) forbids confirmation of a plan that is proposed in an unlawful manner as opposed to a plan with substantive provisions that depend on illegality, an issue of first impression in the Ninth Circuit.

Like the First Circuit Bankruptcy Appellate Panel, we conclude that § 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan. *Irving Tanning*

---

**[1]** Although Cook did not raise this issue, the district court ruled on this ground, and the Trustee addressed the issue in its briefing, so Cook's failure to raise waiver did not prejudice the Trustee. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1071 (9th Cir. 2012) ("We may consider an issue sua sponte . . . if the opposing party will not suffer prejudice.").

*Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B.R. 644, 660 (B.A.P. 1st Cir. 2013). This reading accords with both the statutory text, which does not refer to the substance of the plan, and the weight of persuasive authority. *See In re Gen. Dev. Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) ("Courts addressing the issue have uniformly held that Section 1129(a)(3) does not require that the contents of a plan comply in all respects with the provisions of all nonbankruptcy laws and regulations." (internal quotation marks omitted)).

It is true that some bankruptcy courts have accepted the Trustee's interpretation. In concluding that a bankruptcy case should be dismissed "[b]ecause a significant portion of the Debtor's income [wa]s derived from an illegal activity," the Bankruptcy Court of Colorado stated that "§ 1129(a)(3) forecloses any possibility of this Debtor obtaining confirmation of a plan that relies in any part on income derived from a criminal activity." *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo. 2012) (footnote omitted). But such decisions fail to "square[] that understanding with subsection (a)(3)'s express focus on the manner of the plan's *proposal*." *Irving Tanning*, 496 B.R. at 660.

Turning to the statute, the phrase "not by any means forbidden by law" modifies the phrase "[t]he plan has been proposed." An interpretation that reads the words "has been proposed" out of the second prong of the requirement would be grammatically nonsensical, i.e., "The plan has been . . . not by any means forbidden by law." Moving the reference to illegality to before "proposed" fares no better, i.e., "The plan, not by any means forbidden by law, has been proposed in good faith." The Trustee's position would require us to rewrite the statute completely, rather than resort to its clear

meaning. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).

A contrary interpretation not only renders the words "has been proposed" meaningless, but makes other provisions of § 1129(a) redundant. For example, § 1129(a)(1) requires that "[t]he plan complies with the applicable provisions of this title." If § 1129(a)(3) is read to mean that the plan must comply with all applicable law, there would be no need for a separate requirement that the plan comply with the provisions of the Bankruptcy Code specifically.[2]

We do not believe that the interpretation compelled by the text will result in bankruptcy proceedings being used to facilitate legal violations. To begin, absent waiver, as in this case, courts may consider gross mismanagement issues under § 1112(b). And confirmation of a plan does not insulate debtors from prosecution for criminal activity, even if that activity is part of the plan itself. *In re Food City, Inc.*, 110 B.R. 808, 812 (Bankr. W.D. Tex. 1990). There is thus no need to "convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible 'illegalities' in every plan," a result that would be "inimical to the basic function of bankruptcy judges in bankruptcy proceedings."[3] *Id.*

---

[2] Section 1129(a)(16), which requires that "transfers of property under the plan [comply] with [certain] applicable provisions of nonbankruptcy law," would be similarly redundant under the Trustee's interpretation.

[3] Cases directing courts to look to the "totality of the circumstances" to determine whether a plan was proposed in good faith do not change the analysis here. Under the good faith prong of § 1129(a)(3), courts

Because the Amended Plan was lawfully proposed, the Bankruptcy Court correctly concluded that it met the requirements of 11 U.S.C. § 1129(a).

**AFFIRMED.**

---

must determine whether the plan "achieves a result consistent with the objectives and purposes of the Code." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002); *see also In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 225 (Bankr. E.D.N.Y. 2014) ("The good-faith test speaks more to the process of plan development than to the content of the plan." (internal quotation marks omitted)); *In re 431 W. Ponce de Leon, LLC*, 515 B.R. 660, 673 (Bankr. N.D. Ga. 2014) (holding both that, "[i]n assessing whether the plan was proposed in good faith, the assessment is focused on the plan itself" and "§ 1129(a)(3) requires that only the *plan's proposal*, as opposed to the contents of the plan, be in good faith and in compliance with all nonbankruptcy laws" (internal quotation marks omitted)).   Here, the Amended Plan provides for the creditors' repayment and the debtors' ongoing operations, so it is consistent with the objectives and purpose of the Bankruptcy Code.